Matter of Eidelson (Mulberry Tree Ctr. LLC--Commissioner of Labor) (2018 NY Slip Op 05645)





Matter of Eidelson (Mulberry Tree Ctr. LLC--Commissioner of Labor)


2018 NY Slip Op 05645


Decided on August 2, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 2, 2018

524956

[*1]In the Matter of the Claim of ARTHUR F. EIDELSON, Respondent. MULBERRY TREE CENTER LLC, Doing Business as MULBERRY TREE LEARNING CENTER, Appellant. COMMISSIONER OF LABOR, Respondent.

Calendar Date: May 31, 2018

Before: Garry, P.J., Egan Jr., Mulvey, Aarons and Rumsey, JJ.


Ranni Law Firm, Florida (Joseph J. Ranni of counsel), for appellant.
John Ferrara, Monticello, for Arthur F. Eidelson, respondent.
Barbara D. Underwood, Attorney General, New York City (Dawn A. Foshee of counsel), for Commissioner of Labor, respondent.



MEMORANDUM AND ORDER
Garry, P.J.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed July 6, 2016, which ruled, among other things, that Mulberry Tree Center LLC was liable for unemployment contributions on remuneration paid to claimant and others similarly situated.
Mulberry Tree Center LLC is a provider of educational services that include referring tutors to students with specific instructional needs. In 2012, claimant made an inquiry to Mulberry about becoming a math tutor. Approximately a year and a half later, Mulberry contacted claimant and, after screening him, added him to its list of tutors and began sending him assignments. Claimant provided tutoring services to various students referred to him by Mulberry, but filed a claim for unemployment insurance benefits when these assignments ended. As a result, the Department of Labor undertook a review of Mulberry's operations and found that an employment relationship existed between Mulberry and claimant. It issued an initial determination assessing Mulberry for additional unemployment insurance contributions on [*2]remuneration paid to claimant and others similarly situated. Mulberry requested a hearing and, at its conclusion, an Administrative Law Judge (hereinafter ALJ) ruled, among other things, that an employment relationship did not exist between Mulberry and claimant or those similarly situated who provided tutoring services. Consequently, the ALJ found that Mulberry was not liable for additional contributions on remuneration paid for the tutoring services and that claimant was not entitled to unemployment insurance benefits with respect thereto. The Unemployment Insurance Appeal Board, however, disagreed with the ALJ's findings, concluding that an employment relationship did exist, and Mulberry appeals.
Initially, we note that the existence of an employment relationship is a factual issue for the Board to resolve and its determination will not be disturbed if supported by substantial evidence (see Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010]; Matter of Eray Inc. [Commissioner of Labor], 136 AD3d 1129, 1130 [2016]). Such a relationship has been found where there is evidence that the purported employer exercised control over the results produced or the means used to achieve those results, with the latter being more important (see Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d at 437; Matter of Yuan [Legal Interpreting Servs. Inc.-Commissioner of Labor], 140 AD3d 1550, 1551 [2016], appeal dismissed 29 NY3d 968 [2017]). In cases involving professionals, courts have applied the overall control test, which requires a demonstration that the purported employer exercised control over important aspects of the work performed (see Matter of Concourse Ophthalmology Assoc. [Roberts], 60 NY2d 734, 736 [1983]; Matter of Professional Career Ctr., Inc. [Commissioner of Labor], 105 AD3d 1219, 1219-1220 [2013]). Significantly, it has been recognized that "an organization which screens the services of professionals, pays them at a set rate and then offers their services to clients exercises sufficient control to create an employment relationship" (Matter of Ivy League Tutoring Connection, Inc. [Commissioner of Labor], 119 AD3d 1260, 1260 [2014] [internal quotation marks and citations omitted]; see Matter of Ritch [Island Tutoring Ctr., Inc.-Commissioner of Labor], 139 AD3d 1151, 1152 [2016]).
Here, Mulberry did not advertise for tutors, but received inquiries directly from potential tutors who heard about Mulberry through various means. It then collected their resumes and notified them when an opening became available. When claimant was notified, Mulberry's director reviewed his resume and qualifications, verified his certifications and met with him to discuss the details of the tutoring position, including the pay rate, which was set at $40 per hour and was a percentage of the fee that it charged to its clients. After Mulberry matched a tutor with a student, it provided the tutor with a "student profile" containing pertinent information about the student, but it did not dictate the lesson plan, observe the tutoring sessions or oversee the instruction. Once a tutor accepted an assignment, the tutor set up the instructional schedule directly with the student and/or parent and Mulberry did not impose set work hours. A tutor, however, was free to reject an assignment.
Although tutors could conduct tutoring sessions at other locations, most sessions occurred at Mulberry's learning center where it had books, supplies, computers and equipment available for the tutors to use even though they typically used either their own or their students' instructional materials. When tutors worked at Mulberry's learning center, they completed a time sheet or calendar detailing their hours and the students they tutored. Folders that were provided by Mulberry containing student information were maintained at the learning center. Mulberry also provided the tutors with a "tutoring record" to help them keep track of their hours, the students they instructed and the material covered, as well as a monthly invoice form that the [*3]tutors could submit to receive payment, which was tendered regardless of whether Mulberry received payment from its clients. Mulberry did not reimburse tutors for expenses, withhold taxes from their compensation or prohibit them from working for others. However, it sometimes assisted in resolving scheduling issues and intervened in the rare case when there was a problem with a student. Moreover, if a tutor had accepted an assignment and then became unavailable for an extended period of time, Mulberry would find a replacement. Significantly, Mulberry labeled the tutors "our teachers" and referred to their instruction as "our lesson plans" in its marketing literature, giving the impression that the tutors were, in fact, Mulberry's employees.
In view of the foregoing, we find that Mulberry exercised control over important aspects of the tutors' work notwithstanding its lack of involvement in the actual instruction provided by the tutors. Mulberry was not simply a referral agency, but held itself out as the tutors' employer and acted as such. Despite the fact that there may be some evidence supporting a contrary conclusion, substantial evidence supports the Board's finding that an employment relationship existed between Mulberry and claimant, as well as the other tutors who were similarly situated, and that it was liable for additional contributions on remuneration paid to these individuals (see Matter of Ritch [Island Tutoring Ctr., Inc.-Commissioner of Labor], 139 AD3d at 1153; Matter of Encore Music Lessons LLC [Commissioner of Labor], 128 AD3d 1313, 1315 [2015]; Matter of Ivy League Tutoring Connection, Inc. [Commissioner of Labor], 119 AD3d at 1261; Matter of Montalto [Early Intervention Ctr. of Suffolk Inc.-Commissioner of Labor], 263 AD2d 736, 736-737 [1999]). Mulberry's reliance on Matter of Yoga Vida NYC, Inc. (Commissioner of Labor) (28 NY3d 1013 [2016]) is misplaced, as it is factually distinguishable from the circumstances presented here. Therefore, we find no reason to disturb the Board's decisions.
Egan Jr., Mulvey, Aarons and Rumsey, JJ., concur.
ORDERED that the decisions are affirmed, without costs.